IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

TICKET SOLUTIONS, INC.,          )
a Kansas Corporation,            )
                                 )
            Plaintiff,           )
                                 )
    v.                           )   Case No. 11-2202-WEB
                                 )
SCOTT CUTSHAW, RAYMOND           )
LEONARD "LUCKY" WELLS, T-TOWN    )
TICKETS, LLC, an Alabama Limited )
Liability Company, CYNTHIA WELLS,)
CANDICE CARDEN, JOHN ED BELVIN,  )
and JEREMY TRANTER,              )
                                 )
            Defendants.          )

Memorandum and Order

Plaintiff Ticket Solutions, Inc. (hereafter Ticket Solutions), filed the above titled case alleging the individual defendants induced customers of Ticket Solutions to become customers of T-Town Tickets, solicited employees of Ticket Solutions to cease employment with Ticket Solutions, retained Ticket Solutions' confidential client and proprietary information and other trade secrets, interfered with contracts and business expectancies of Ticket Solutions, and used the stolen information to engage in direct and indirect competition with Ticket Solutions. Cutshaw, T-Town Tickets, Cynthia Wells, Carden and Belvin filed a Motion to Dismiss (Doc. 12), arguing that the Court lacks personal jurisdiction over the defendants, and requesting dismissal of the case. Tranter also filed a Motion to Dismiss (Doc. 17), arguing the Court lacks personal jurisdiction.

I. Facts

Because this matter is before the Court on a motion to dismiss, all well pleaded factual allegations in a complaint will be accepted as true and viewed in the light most favorable to the

plaintiff, to the extent they are uncontroverted by affidavits or other written evidence.  Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).  If the parties provide conflicting affidavits, the factual disputes must be resolved in the plaintiff's favor.  Id.

Ticket Solutions is a business incorporated in the State of Kansas.  Ticket Solutions resells tickets to sporting, theatrical, cultural and other events throughout the world.  Cutshaw owned SEC Enterprises, LLC, a business engaged in the reselling of tickets to sporting and entertaining events.  In December 2007, Cutshaw sold SEC Enterprises to Ticket SEC Acquisition LLC, an affiliate of Ticket Solutions.  Ticket SEC Acquisition assigned its rights under the purchase agreement  to Ticket Solutions.  Ticket Solutions then hired Cutshaw as the General Manager of its Indianapolis office.   Cutshaw executed an Executive Employment Agreement with Ticket Solutions.  Cutshaw voluntarily terminated his employment with Ticket Solutions in May 2010.  Cutshaw was a resident of Indiana during the above described period, and remains a citizen of Indiana today.  Cutshaw became an employee of T-Town Tickets some time after June 1, 2010.

Raymond Leonard "Lucky" Wells (hereafter Lucky) owned Events Worldwide, and sold the company to Ticket Solutions in September 2007.  He was then employed by Ticket Solutions as the National Events Sales Director.  Lucky signed an Executive Employment Agreement with Ticket Solutions in conjunction with his sale of Events Worldwide to Ticket Solutions in late 2007.  Lucky has been a citizen of Florida since the sale of Events Worldwide.  Lucky was terminated from Ticket Solutions in February 2010.  Lucky was paid compensation and signed an Employment Separation and Release Agreement.

Cynthia Wells is an individual who was a citizen of Florida while employed by Ticket

Solutions, and she remains a citizen of Florida.  Wells entered into a consulting agreement with Ticket Solutions.  Wells was hired by T-Town tickets following her employment with Ticket Solutions.

Carden is a citizen of Alabama.  Carden began working for Ticket Solutions in September 2007 as a Client Services Representative.  Around June 2010, Carden began employment with T-Town Tickets and voluntarily resigned from Ticket Solutions.  Ticket Solutions alleges that while employed by them, Carden emailed a substantial amount of Ticket Solutions' confidential and valuable client and planning information to her personal email address.

Tranter resides in Indiana.  Tranter began to work for Ticket Solutions in late 2007 as a Procurement Specialist in Ticket Solutions' Indianapolis office.  Tranter voluntarily resigned from Ticket Solutions in October 2010, and began working for T-Town Tickets soon thereafter.

Belvin is a citizen of Alabama.   Belvin is a part owner or partner in T-Town Tickets.  Ticket Solutions notified Belvin of the Executive Employment Agreement between Ticket Solutions and Lucky, including the restrictions, non-compete clause, and non-solicitation clause.

T-Town Tickets is an Alabama limited liability company that sells tickets to sporting, theatrical, cultural and other events throughout the world, including Kansas.  Ticket Solutions alleges that T-Town Tickets knew of the Employment Agreements Ticket Solutions entered into with Cutshaw and Lucky, and knew the restrictions, non-compete clauses, and non-solicitation clauses, and yet induced them to breach the contracts.

II. Standard of Review

In a motion to dismiss for a lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), the

plaintiff bears the burden of proving jurisdiction exists. Wenz, 55 F.3d at 1505. When the motion is decided on the basis of affidavits and without an evidentiary hearing, as it is in the present case, the burden on the plaintiff is light. Id. "The plaintiff need only make a prima facie showing that jurisdiction exists." Id. All uncontroverted, non-conclusory allegations are presumed true, and conflicting factual disputes are resolved in plaintiff's favor. Id.

III. Discussion

To establish personal jurisdiction over a defendant, plaintiff must show that jurisdiction is proper under the laws of the forum state, and the exercise of jurisdiction would not offend due process. Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000). The Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process. Volt Delta Resources, Inc. V. Devine, 241 Kan. 775, 740 P.2d 1089, 1092 (1987). Due process requires "minimum contacts" with the State of Kansas, "such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" Dudnikov v. Chalk & Vermillion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Minimum contacts can be established by either general jurisdiction or specific jurisdiction.

A. General Jurisdiction

General jurisdiction is based on a non-resident's "continuous and systematic" contacts with the forum state, although it is not required that the claim be related to those contacts. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

B. <u>Specific Jurisdiction</u>

The Tenth Circuit, in <u>OMI Holdings, Inc. v. Royal Ins. Co. of Canada</u>, 149 F.3d 1086 (10th Cir. 1998), set forth the requirement for establishing specific jurisdiction as follows:

> "Our specific jurisdiction inquiry is two-fold. First, we must determine whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." <u>World-Wide Volkswagen</u>, 444 U.S. at 297, 100 S.Ct. 559. Within this inquiry we must determine whether the defendant purposefully directed its activities at residents of the forum. <u>Burger King Corp.</u>, 471 U.S. at 472, 105 S.Ct. 2174, and whether the plaintiff's claim arises out of or results from "actions by the defendant *himself* that create a substantial connection with the forum state." <u>Ashi Metal Industry Co. v. Superior Court of California</u>, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Second, if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." <u>Id.</u> at 113, 107 S.Ct. 1026. This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is "reasonable" in light of the circumstances surrounding the case. See id."

<u>OMI Holdings, Inc.</u>, 149 F.3d at 1091. "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less the defendant need show in terms of unreasonableness to defeat jurisdiction." <u>Id.</u> at 1092.

"In the tort context, we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." <u>Dudnikov v. Chalk & Vermillion Fine Arts, Inc.</u>, 514 F.3d 1063, 1071 (10th Cir. 2008).

C. <u>Scott Cutshaw</u>

Ticket Solutions claims this Court has jurisdiction over Cutshaw based on the Executive Employment Agreement Cutshaw negotiated with Ticket Solutions. Ticket Solutions also

alleges the tortious actions of Cutshaw caused injury to Ticket Solutions in the State of Kansas. Cutshaw argues the Executive Agreement does not limit this action to the district court of Kansas. Cutshaw also argues that the Court's personal jurisdiction over an employer does not justify the exercise of personal jurisdiction over its employee. Cutshaw argues that he did not have sufficient personal contacts with the State of Kansas.

> The Executive Employment Agreement contains the following language:
>
> <u>Governing Law</u>. This Agreement shall be interpreted in accordance with and governed by the laws of the State of Kansas, without regard to the conflicts of laws principles thereof.
>
> <u>Jurisdiction</u>. The Company and Cutshaw hereby agree to submit any suit, action, or proceeding arising out of or relating to this Agreement to the jurisdiction of the Circuit Court for Johnson County, Kansas or the United States District Court in Kansas encompassing Johnson County, Kansas. The Company and Cutshaw further agree that all claims with respect to such suit, action or proceeding may be heard and determined only in any of such courts. The Company and Cutshaw waive, to the fullest extent permitted by law, any objection regarding the venue of such suit, action or proceeding in any court aforementioned, including proceedings for enforcement of any court order and the Company and Cutshaw further waive any claim that such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. The Company and Cutshaw hereby expressly waive all rights of any other jurisdiction which either of them may now or hereafter have by reason of their present or subsequent domiciles. (Doc. 25-1).

Forum selection clauses can be mandatory or permissive. Mandatory forum selection clauses include terms indicating exclusive jurisdiction and / or venue. <u>National Inspection & Repairs, Inc. v. George S. May Intern. Co.</u>, 202 F.Supp.2d 1238, 1243 (D.Kan. 2002). Permissive forum selection clauses are non-exclusive and discretionary. <u>Id.</u> The forum selection clause at issue in this case is mandatory and requires that any action arising out of the contract be brought and litigated in the either Johnson County or the District of Kansas federal court. The contract was specific in limiting the venue. The contract also used the words, "any suit, action, or

proceeding," which would include not only breach of contract claims, but also tort claims. Clearly, the parties intended to limit any legal action to either Johnson County if it was filed in State Court, and Kansas if it was filed in Federal Court. Finally, forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." Milk "N" More, Inc. v. Beavert, 963 F.2d 1342. 1346 (10th Cir. 1992). Enforcement of the agreement is not unreasonable. The parties are in the same position now as they were when the contract was negotiated. Ticket Solutions is a Kansas Company, and Cutshaw resides in Indiana. The requirement of personal jurisdiction is an individual due process right and the "parties to a contract may agree in advance to submit to the jurisdiction of a given court." Ins. Corp. Of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 704, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). When the provisions of a contract have been "obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement does not offend due process." Burger King Corp., 471 U.S. at 472 n.14. Although an employment contract with an employer is not enough to justify personal jurisdiction in the employer's state, the mere fact that defendant performed much of the contract outside Kansas does not defeat jurisdiction. Equifax Services, Inc. v. Hilz, 905 F.2d 1355, 1358-1359 (10th Cir. 1990).

     Contracts indicate purposeful affiliation with the forum through an interstate contractual relationship. Burger King, 471 U.S. at 479-81. The terms of the contract as well as the prior negotiations and future consequences should all be evaluated to determine whether the defendant purposefully established minimum contacts with the forum. Cutshaw sold his business to Ticket Solutions, which in turn paid Cutshaw's creditors. Cutshaw then entered into an employment

agreement with Ticket Solutions in which he agreed Kansas law would control any legal proceedings, and agreed to submit to the jurisdiction of Kansas. Cutshaw had access to company issued cellular phone, supplier information, customer information, and a company credit card. Neither party discusses whether Cutshaw made any trips to Kansas for meetings or work related business, nor is there mention whether Cutshaw's income was paid out of the Kansas Corporation. However, from the information provided to the Court, it is clear that Cutshaw accepted an employment business relationship with Ticket Solutions voluntarily, with the intent to benefit financially from the relationship.

Cutshaw relies on a number of cases in support of the argument that personal jurisdiction over an employer does not justify the exercise of personal jurisdiction over its employees or officers. However, a review of the cases shows that none of them arise out of an employment contract in which the employee agreed to jurisdiction in the employment contract. The cases are easily distinguishable.

The Court finds the relationship between Cutshaw and Ticket Solutions was not random, but deliberate and purposeful. This, along with the employment contract in which Cutshaw waived his due process right and submitted to the jurisdiction of Kansas, is sufficient for the Court to find that it is reasonable for Cutshaw to be called into Court in Kansas. Ticket Solutions also alleges that Cutshaw committed tort violations, including conversion and misappropriation of trade secrets. At least one District Court in Kansas has found that the disclosure of trade secrets, whether by electronic modern communication or otherwise, may eliminate the need for physical presence. See US Bioservices Corp. v. Lugo, 2008 WL 4747473 (D.Kan. 2008). The Court's exercise of jurisdiction over Cutshaw is appropriate considering

Cutshaw's contacts with the state, the employment contract, and the alleged harm to Ticket Solutions, a Kansas Corporation, by Cutshaw's alleged tortious acts.

D.  T-Town Tickets, LLC

T-Town Tickets, LLC argues that personal jurisdiction is not proper in this Court as the Complaint does not allege any contacts with the State of Kansas.  T-Town Tickets alleges it does not do business in Kansas, it has never done business in Kansas, it does not maintain an office in Kansas, no marketing is done within the state, and there are no minimum contacts within the state.  Ticket Solutions argues that T-Town Tickets purposefully directs its activities at residents of Kansas by maintaining a web site which offers tickets to numerous events in the State of Kansas, as well as allowing residents of Kansas to purchase tickets to out-of-state events.  Ticket Solutions argues that T-Town is transacting business in the state pursuant to K.S.A. § 60-308(b)(1), as T-Town Tickets profits from the sale of tickets.

Recently the Tenth Circuit set forth a new approach in determining whether the defendant's Internet activity is sufficient to establish general jurisdiction.  In Shrader v. Biddinger, 633 F.3d 1235 (10th Cir. 2011), the Court adopted the approach set out in ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707 (4th Cir. 2002).  The Tenth Circuit quoted ALS Scan extensively:

> "[A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.  Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received.  Such passive Internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a

9

>potential cause of action cognizable in courts located in the State." Shrader, 633
>F.3d at 1240-41, quoting ALS Sign, 293 F.3d at 714.

The Tenth Circuit stated that the maintenance of a web site does not subject the owner to personal jurisdiction, nor does posting defamatory comments or information. Id. at 1241. The Tenth Circuit specified that the court should look to "indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." Id.

The Court in Shrader went on to discuss that general jurisdiction would include the sales part of a website, and "selling products to residents of a state can subject the seller to general jurisdiction in that state, depending on the nature and degree of commercial activity with the forum state." Id. at 1243. The sales must be substantial. Id.

Finally, the Shrader Court also discussed what is necessary to exercise personal jurisdiction over an Internet based company to satisfy specific jurisdiction. The Court found that merely posting information on the internet does not establish minimum contacts. Id. at 1244. The Court considered the focal point of the internet posting, in terms of the audience or its content, where the harm was suffered, and whether that was related simply to residence and not because activities were purposefully directed to the state. Id.

In Advisors Excel, LLC v. Senior Advisory Group, LLC, 2011 WL 3489884 (D.Kan. 2011), the Court found that when a website offers training videos, e-books, and webinars that are free to view and do not result in any sales, plaintiff was unable to make a prima facie showing there were substantial contacts, or a physical presence in the state. However, the Court found, as did the Court in Toytrackerz LLC v.Koehler, 2009 WL 1505705 (D.Kan. 2009), that after the defendant received a demand letter notifying them of copyright infringement and refused to

remove the information from the website, defendant's actions constituted purposeful activities.

In a Fourth Circuit case applying ASL Sign, the Court looked at whether the website was designed to attract or serve the forum state's audience or was the focal point of the article. Young v. New Haven Advocate, 315 F.3d 256, 263-64 (4th Cir. 2002). The Court reasoned that because the defendant was not targeting the forum state's citizens, they could not reasonably anticipate being haled into court there. Id. at 264.

In the case at hand, T-Town Tickets' website advertises and sells tickets to sporting and cultural events in the State of Kansas. Residents of Kansas, as well as residents of any state and possibly country, could purchase tickets to events located in Kansas, as well as in other states. T-Town Tickets presumably profited from the sale of tickets. Applying the factors set out by the Court in Shrader, the Court finds that T-Town Tickets directed electronic activity into the State. T-Town Tickets sold tickets to events located in Kansas, and also sold tickets to residents of Kansas, activities which result in engaging in business within the state.

The final consideration is whether the activity creates a potential cause of action cognizable in Kansas Courts. In this case, the complaint alleges T-Town Tickets committed tortious interference with contract. Specifically, Ticket Solutions alleges that T-Town Tickets knew the terms of Lucky's and Cutshaw's employment agreements, knew they were using and disclosing trade secrets, induced Lucky and Cutshaw to breach their contracts, and solicited business information from Wells and Cutshaw. The tort of interference with a contract is

recognized in Kansas. See Burcham v. Unison Bancorp, Inc., 276 Kan. 393, 77 P.3d 130 (2003). T-Town Tickets did more than place information on the Internet. The Complaint alleges facts

11

that if true, would show that T-Town Tickets placed information on a website with the intent of engaging in business in the State of Kansas.  The Complaint does not allege the amount of sales T-Town Tickets recorded from ticket sales in Kansas, however, at this stage of the proceeding, the Complaint has set forth sufficient allegations for the Court to find that general jurisdiction exists and the exercise of personal jurisdiction is appropriate.

E.  Cynthia Wells

Ticket Solutions sets forth one claim against Cynthia Wells, tortious interference with a contract.  Wells argues she was never a resident of Kansas.  She entered into a consulting agreement with Ticket Solutions, but never provided any services to Ticket Solutions.  Wells argues she is not involved in any business activity in the State of Kansas.  Ticket Solutions argues that Wells induced Lucky and Cutshaw to breach their Executive Employment Agreements and induced them to use trade secrets and confidential information misappropriated from Ticket Solutions to compete with Ticket Solutions.

The Complaint does not allege "continuous and systematic" contacts by Wells within the State of Kansas.  Wells was the stockholder of the company that was sold to Ticket Solutions in 2007.  Ticket Solutions has not alleged that the mere sale of a company to a Kansas company in 2007 establishes general jurisdiction over the stockholder of the company.  An isolated sale is insufficient to establish general jurisdiction.

The Complaint does not establish minimum contacts with Kansas either, leaving Ticket Solutions without either specific or general jurisdiction over Wells.  Minimum contacts requires the defendant to "purposefully direct" activities at the residents of the forum state, and litigation which is based on the activities.  Burger King Corp., 471 U.S. 462 at 472.  Ticket Solutions has

only alleged that Wells induced Cutshaw and Lucky to breach their employment agreements. Neither person was a resident of Kansas. Although both were employees of a Kansas Corporation, that connection is not sufficient to establish minimum contacts with Wells. There must be some act by the defendant in which they "purposefully avails itself of the privilege of conducting activities within the forum State." Hanson v. Denchla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), or directed its activities at the forum state. Dudnikov, 514 F.3d at 1071. The Complaint fails to establish facts to show either.

Ticket solutions did not include Wells' consulting agreement as part of the Complaint. Without knowledge of the contents of the agreement, it cannot be used to establish minimum contacts with the forum state. The Complaint does not allege that Wells reached out into the State of Kansas to establish a relationship with a resident of Kansas. In as much as Ticket Solutions has failed to established Wells had minimum contacts with the State of Kansas, the Court cannot exercise jurisdiction over Wells.

F. Candice Carden

Carden argues that the court does not have personal jurisdiction although she was an employee of Ticket Solutions for a period of time. Carden was a resident of Alabama while employed by Ticket Solutions, she was not employed under an employee contract, and she only traveled to Kansas on two different occasions for work. Carden argues that her employee status is not sufficient for this Court to exercise jurisdiction. Ticket Solutions argues that Carden intended T-Town Tickets to compete with Ticket Solutions in the State of Kansas in violation of Cutshaw's and Lucky's Executive Employment Agreement, she appropriated confidential and proprietary information, and she induced Lucky and Cutshaw to breach their Executive

Employment Agreements. Ticket Solutions argues that Carden's actions caused them harm in Kansas.

Clearly there are no "systematic and continuous" contacts in the State of Kansas for the Court to exercise general personal jurisdiction over Carden. Although Carden was employed by a Kansas business, she only had two visits within the state during her employment. A business relationship with a person or entity in the forum state does not subject a person to general jurisdiction here, nor does sporadic or isolated visits. Shrader 633 F.3d at 1246-47.

In Equifax Services, Inc. v. Hilz, 905 F.2d 1355 (10th Cir. 1990), the Court of Appeals found that the Court correctly exercised specific jurisdiction over an employee of a Kansas company located in another state. The Court found that the employee had regular contact with the employer in Kansas, by telephone, mail, and electronic communications. Id. at 1358. The employee's customers were invoiced from Kansas and made payments to Kansas. Id. The employee was paid from Kansas, and office materials were supplied from Kansas. Id. Finally, the Court found that the employee contract was negotiated in Kansas. Id. The Court also considered that the employee's only significant physical presence in Kansas was on two occasions, to attend a training session and when he was summoned to the company office for a reprimand. Id. at 1359.

Applying Shrader and Equifax, Carden does not have minimum contacts with the state to expect to be brought into court here. The Complaint does not set forth any facts that Carden

purposefully directed activities at residents of the forum. Instead, Ticket Solutions alleges Carden participated in a number of activities in Alabama, such as emailing information, inducing

Cutshaw and Lucky to breach their Agreements, and incorporating T-Town Tickets.  Clearly none of these activities were completed in Kansas, directed at Kansas, nor was Carden attempting to avail herself of the privilege of conducting activities within Kansas.  The facts that were present in Equifax are not present in this case, as there is no information regarding the contact between Carden and Ticket Solutions, how Carden was paid, how she received her income, and most importantly, there was not an employee contract between the parties.  Ticket Solutions has not established minimum contacts, and the Court cannot exercise jurisdiction over Carden.

G.   John Ed Belvin

Belvin owned Need One Ticket, Inc., which was sold in January 2006 to Event Worldwide, and one of the purchase terms provided that Belvin was to receive $10,000 per quarter for 40 quarters.  Approximately a year later, Need One Ticket was sold to Ticket Solutions, and Ticket Solutions became responsible for the monthly payments to Belvin.  Belvin was not a party to the Ticket Solutions transaction.  Belvin argues that he has never worked for Ticket Solutions, and he does have minimum contacts with the state.  Ticket Solutions argues that Belvin induced Lucky and Cutshaw to breach their Executive Employment Agreements with Ticket Solutions to use trade secrets and other confidential and proprietary information.  Ticket Solutions argues that Belvin is now working for T-Town Tickets and using Ticket Solutions' confidential and proprietary information which injured Ticket Solutions in Kansas.

Clearly there are no "systematic and continuous" contacts in the State of Kansas for the Court to exercise personal jurisdiction over Belvin.  Although Belvin had contact with Ticket Solutions in Kansas as they sent him quarterly payments, those contacts were made by Ticket

15

Solutions and not Belvin.

The Complaint does not allege sufficient facts for the Court to exercise specific personal jurisdiction over Belvin. Belvin did not have any direct contact with the State of Kansas. Although he was receiving quarterly payments from a company located in Kansas, that was not a result of him conducting activity in the state, or directing activity toward the state. The tortious conduct alleged by Ticket Solutions all occurred in the State of Alabama. The injury occurred in Kansas, but that is due solely to the fact that Ticket Solutions is located in the state. Ticket Solutions has not established that Belvin has minimum contacts with the state, and the Court cannot exercise personal jurisdiction.

H.  Jeremy Tranter

Tranter argues that he is a citizen of Indiana, but currently resides in the State of Florida. Tranter argues that his employment with Ticket Solutions for almost three years is insufficient for the Court to exercise jurisdiction, as he only traveled to Kansas on three different occasions. Ticket Solutions argues that Tranter emailed Ticket Solutions' confidential and proprietary information and trade secrets to his personal email account, Tranter induced Lucky and Cutshaw to breach their Executive Employment Agreements and to use trade secrets and other confidential and proprietary information, and the injury to Ticket Solutions occurred in Kansas.

Clearly there are no "systematic and continuous" contacts in the State of Kansas for the Court to exercise personal jurisdiction over Tranter. Making three trips to Kansas in three years, without any additional facts, is insufficient to find general jurisdiction over Tranter.

Ticket Solutions has not set forth sufficient facts in the Complaint for the Court to exercise specific jurisdiction over Tranter. Tranter resides in Indiana, and began working for

16

Ticket Solutions in late December 2007 as a Procurement Specialist in Plaintiff's Indianapolis, Indiana office. He resigned in October 2010. The Complaint does not set forth any facts that Tranter purposefully directed activities at residents of Kansas. Ticket Solutions alleges Tranter sent emails with Ticket Solutions company information to himself, and induced Cutshaw and Lucky to breach their Agreement. Ticket Solutions does not specify if these activities occurred in Indiana or Florida, but either way, clearly Tranter did not complete the activities in Kansas, direct the activity toward Kansas, nor was Tranter attempting to avail himself of the privilege of conducting activities within Kansas. The facts that were present in Equifax are not present in this case, as there is no information regarding the contact between the Tranter and Ticket Solutions, how Tranter was paid, how he received his income, and most importantly, there was not an employee contract between the parties. Ticket Solutions has not established minimum contacts, and the Court cannot exercise jurisdiction over Tranter.

IV. Conclusion

IT IS THEREFORE ORDERED, for the reasons set forth above, that the Motion to Dismiss (Doc. 12) be granted in part and denied in part. Specifically, the motion to dismiss for lack of personal jurisdiction as to Scott Cutshaw and T-Town Tickets is denied. The motion to dismiss as to Cynthia Wells, Candice Carden, and John Ed Belvin is granted for lack of personal jurisdiction.

IT IS FURTHER ORDERED, for the reasons set forth above, that the Motion to Dismiss (Doc. 17) as to Jeremy Tranter be granted for lack of personal jurisdiction.

IT IS SO ORDERED this 31st day of October, 2011.

Wesley E. Brown
Senior United States District Court Judge